IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


COLEEN CLEMENTE,                                    04-CV-1417-BR

          Plaintiff,                                OPINION AND ORDER

v.

OREGON DEPARTMENT OF CORRECTIONS,
MAX WILLIAMS, REBECCA PRINSLOW,
and WADE SCROGHAM,

          Defendants.


COLEEN CLEMENTE
2242 Wildwood Dr. S.E.
Salem, OR  97306
(503)409-0658

          Plaintiff, *Pro Se*


1 - OPINION AND ORDER

**KEITH J. BAUER**
Parks, Bauer, Sime, Winkler & Fernety LLP
570 Liberty St. SE, Suite 200
Salem, OR  97301
(503)371-3502

        Attorneys for Defendant Oregon
        Department of Corrections


**BROWN, Judge.**

    This matter comes before the Court on the Amended Motion for Summary Judgment (#56) of Oregon Department of Corrections (ODOC) and ODOC's Motion to Strike certain evidence submitted by Plaintiff with her Response.[1]  The Court heard oral argument on June 13, 2006.

    On October 1, 2004, Plaintiff Coleen Clemente filed a Complaint in which she alleged ODOC, her current employer, as well as individual Defendants who have since been dismissed, discriminated against her on the basis of her gender.  On November 2, 2004, Plaintiff filed an Amended Complaint, and on March 1, 2005, Plaintiff filed a Second Amended Complaint in which she brings two claims against ODOC under Title VII, 42 U.S.C. § 2000(e), and one claim under the Equal Pay Act (EPA),

---

    [1] The Court notes ODOC titled a section of its Reply as a "Motion to Strike" rather than merely objecting to certain evidence submitted by Plaintiff in her Response to ODOC's Motion for Summary Judgment or filing a separate Motion to Strike and Plaintiff filed a separate response to ODOC's "Motion to Strike." In any event, the Court considers all of the parties' arguments in this Opinion and Order.

2 - OPINION AND ORDER

29 U.S.C. §§ 206(d) and 216(b).  In her Second Amended Complaint, Plaintiff alleges ODOC discriminated against her because of her gender by failing to pay her the same starting salary as a similarly situated male employee and by retaliating against her after she complained about gender discrimination.

For the following reasons, the Court **DENIES** ODOC's Motion to Strike and **GRANTS** ODOC's Motion for Summary Judgment.


## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted and, if disputed, are viewed in the light most favorable to Plaintiff.

Plaintiff initially applied and interviewed for a position as corrections hearings officer with ODOC in Umatilla, Oregon, in the summer of 1999.

ODOC requires an applicant for a corrections hearings officer position to have at least one of the following qualifications:  1) a law degree, 2) a bachelor's degree with courses in law and one year of experience conducting contested case hearings, or 3) three years of experience conducting contested case hearings.  When Plaintiff initially applied with ODOC, she was practicing law in Maryland and planning to relocate to Oregon.  Wade Scrogham, supervisor of hearings officers and support staff east of the Cascades, telephoned Plaintiff in

3 - OPINION AND ORDER

October 1999 to inform her that another applicant, Matt Klein, had been hired for the position. Plaintiff alleges Scrogham told Plaintiff that another position would not be open until July 2001. Nevertheless, Plaintiff relocated to Oregon and accepted a position as a law clerk with another state employer. Plaintiff made $2,400 per month as a law clerk while studying for the Oregon State Bar Examination, which she passed.

In March 2000, Plaintiff applied for another corrections hearings officer position in Salem. Sam Nagy, a male, also applied for the Salem position. After the location for the hearings officer position changed to Umatilla, some applicants, including Nagy, withdrew their names from consideration. Scrogham and Dave Schumacher, supervisor of hearings officers and support staff west of the Cascades, conducted the interviews. Scrogham later telephoned Plaintiff and offered her the Umatilla position. Plaintiff alleges Scrogham informed her that she would have to start at the first step of the pay scale and her salary was nonnegotiable. Plaintiff began her employment as a corrections officer with ODOC on May 15, 2000, making $3,269 per month. Plaintiff did not have any previous experience as a hearings officer nor had she participated in or conducted any disciplinary actions involving prisoners.

ODOC hired the following corrections hearings officers close to the time that ODOC hired Plaintiff:

### 1.    Sam Nagy

Nagy was hired by ODOC in August 2000 and started at pay step three, which was approximately $5,280 more per year than Plaintiff's starting salary.  Nagy received his bachelor-of-arts degree in criminal justice from Washington State University and his juris doctorate from Lewis and Clark Law School.  Before being employed by ODOC, he worked as a corrections hearings officer and a background investigator for Multnomah County Sheriff's Office.  His average salary as a corrections hearings officer for the eight months prior to taking the job with ODOC was $3,345 per month with the opportunity for overtime pay.  Nagy negotiated his salary with ODOC to pay step three because it was commensurate with his experience and his prior pay.

### 2.    Scott Lumsden

Scott Lumsden was hired by ODOC in July 2001 as a corrections hearings officer at pay step one, the same initial pay step as Plaintiff received.  Before being hired by ODOC, Lumsden worked for a judge in Idaho, had experience preparing legislative bills in the Oregon legislature, worked as an attorney at the State Public Defenders Office in Pendleton, and worked as an attorney in private practice.

### 3.    Matt Klein

Matt Klein was hired by ODOC in the summer of 1999 as a corrections hearings officer also at pay step one.  Although he

was not a law-school graduate, he had experience in the
Washington corrections system.

Plaintiff complained to ODOC in February 2003 and to the
Oregon Bureau of Labor and Industries (BOLI) in March 2003 that
Scrogham was discriminating against her based on her gender.


### ODOC'S MOTION TO STRIKE

As noted, ODOC included a section in its Reply titled
"Motion to Strike" in which it requests the Court to strike
references to the following in Plaintiff's Response and
Affidavit:  Plaintiff's unverified interrogatory responses as
evidence; allegations in Plaintiff's unverified Second Amended
Complaint as evidence; and certain documents, or parts thereof,
referred to in Plaintiff's Affidavit.  ODOC also asserts
Plaintiff included factual statements in her Response without
supporting citations and made citation references that did not
support the factual statements to which they were attributed.

The Court heard argument on and resolved many of ODOC's
objections during the hearing on June 13, 2006.  Although some of
ODOC's remaining objections may be meritorious, the Court
concludes the evidence to which ODOC objects is not material for
purposes of ruling on ODOC's Motion for Summary Judgment.
Accordingly, the Court denies ODOC's Motion to Strike.


6 - OPINION AND ORDER

## ODOC'S AMENDED MOTION FOR SUMMARY JUDGMENT

In her first claim under Title VII and third claim under the EPA, Plaintiff alleges ODOC discriminated against her because of her gender by failing to pay her the same salary as a similarly situated male employee. In her second claim, Plaintiff alleges ODOC violated Title VII by retaliating against her after she complained about gender discrimination.

In response, ODOC asserts it did not discriminate against Plaintiff, and the variation in wages between her and another similarly situated male employee was due to his prior relevant experience. ODOC also contends it had legitimate, nonretaliatory reasons for its actions and, therefore, did not retaliate against Plaintiff as a result of her complaints about gender discrimination.

## Standards

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a

7 - OPINION AND ORDER

reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id.*  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. West Fin.*, 381 F.3d 948 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## <u>Discussion</u>

### A.   Plaintiff's First and Third Claims:  Equal Pay under Title VII and the EPA

In her first claim under Title VII and third claim under the EPA, Plaintiff alleges ODOC discriminated against her by paying her a lower starting salary than a similarly situated male employee.

Differentials in wages on the basis of a person's gender are unlawful under both Title VII and the EPA. 42 U.S.C. § 2000-2(a) and 29 U.S.C. § 206(d)(1). When a Title VII claimant contends she has been denied equal pay for substantially equal work, EPA standards apply. *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (9th Cir. 1986). Title VII incorporates EPA defenses. Thus, a defendant who proves one of the available defenses cannot be held liable under either the EPA or Title VII. *Id*.

**1.    EPA**

The EPA provides:

> No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1). "The Equal Pay Act creates a type of strict liability; no intent to discriminate need be shown." *Maxwell,* 803 F.2d at 446. To establish a claim under the EPA, the "plaintiff has the burden of establishing a *prima facie* case of discrimination by showing that employees of the opposite sex were paid different wages for equal work." *Stanley v. Univ. of S. Cal.,* 178 F.3d 1069, 1073-74 (9th Cir. 1999).

If the plaintiff establishes a *prima facie* case, the burden of persuasion shifts to the defendant to prove by a preponderance

of the evidence that the disparity in pay is justified under one
of the four affirmative defenses available under the EPA.  *Hein
v. Oregon Coll. of Educ.*, 718 F.2d 910, 913 (9th Cir. 1983).  A
pay disparity is justified only if it is made pursuant to "(i) a
seniority system; (ii) a merit system; (iii) a system which
measures earnings by quantity or quality of production; or
(iv) a differential based on any other factor other than sex."
29 U.S.C. § 206(d)(1).  Even after the defendant demonstrates a
pay differential was based on a factor other than sex, the
employee may prevail by showing that the employer's proffered
nondiscriminatory reason is a pretext for discrimination.
*Stanley*, 178 F.3d at 1076.

      **a.**    **Plaintiff's *Prima Facie* Case**

      To demonstrate a *prima facie* case of unequal pay, the
plaintiff must prove she received lower pay than the average
wages paid to all male employees performing substantially equal
work.  *Hein*, 718 F.2d at 916.  The plaintiff may not compare
herself only to her most highly paid counterpart.  *Id.*  An
employee may demonstrate unequal pay in comparison to one
employee of the opposite sex provided no other appropriate
comparative employees are excluded.  *Id*. at 918.

      Here plaintiff alleges the only employee to consider as
a comparator is Sam Nagy, who ODOC hired at a higher salary to
fill an identical position three months after hiring Plaintiff.

In response, ODOC points to additional comparators, Scott Lumsden and Matt Klein, who were hired at identical positions and at the same salary as Plaintiff.  As noted, Lumsden was hired in July 2001 (14 months after ODOC hired Plaintiff), and Klein was hired in the summer of 1999 (about 1 year before ODOC hired Plaintiff).  Although Plaintiff asserts Lumsden and Klein did not work long enough to be considered comparators in light of the fact that they were both terminated before completing their "trial service period," the Court finds Plaintiff's argument without merit.  Plaintiff contends she received a starting salary lower than that of male employees in equal positions, and, therefore, the inquiry centers on the starting salaries and the positions of those male employees rather than the length of their service.

Although Plaintiff's argument concerning the number of comparators fails, her *prima facie* burden is only to show that she is "receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work and similarly situated with respect to any other factors, such as seniority, that affect the wage scale."  *Hein*, 718 F.2d at 916.  Solely on this record, the Court finds Plaintiff has shown her starting salary (pay step one) was less than the average comparator's salary (two at pay step one and one at pay step three).  The Court, therefore, concludes Plaintiff has established a *prima facie* case under the EPA.

**b.   Disparity in Pay**

Because Plaintiff has established a *prima facie* case under the EPA, the burden of persuasion shifts to ODOC to prove by a preponderance of the evidence that the disparity in pay is justified under one of the EPA's four affirmative defenses.  ODOC alleges the disparity in pay between Plaintiff and Nagy, the only comparator who was paid more, was based on a factor other than gender; namely, their different levels of experience.

The term "based on a factor other than sex" does not mean literally any other factor, but rather a factor that, at a minimum, was adopted for a neutral legitimate business reason; *i.e.*, superior experience, education, and ability may justify pay disparities that are not based on gender.  *Stanley*, 178 F.3d at 1075.  Employers may reward professional experience and education without violating the EPA.  *Id*.  The EPA does not prohibit variations in wages, but only discriminatory variations in wages. *Hein*, 718 F.2d at 916.

ODOC argues it did not discriminate against Plaintiff as reflected by the fact that Plaintiff and two male employees (Lumsden and Klein) with qualifications similar to Plaintiff started at pay step one while only Nagy, who had superior qualifications, started at pay step three.  ODOC provides substantial evidence that the difference in pay between Nagy's starting salary and the starting salaries of Plaintiff, Lumsden,

12 - OPINION AND ORDER

and Klein was due to Nagy's prior experience as a corrections
hearings officer, a law-school graduate, and an employee of
Multnomah County Corrections where he received a salary higher
than ODOC's pay step one.  As noted, Plaintiff and Lumsden did
not have prior experience as corrections hearings officers, and,
even though they were law-school graduates with prior courtroom
experience, they were not versed in issues involving work as a
corrections hearings officer in the State of Oregon.  Klein had
prior experience in corrections, but he was not a law-school
graduate.

        Nevertheless, Plaintiff challenges Nagy's education,
experience, and ability and argues it was not "superior" to hers.
Indeed, Plaintiff asserts her education and ability is at least
equal, if not superior to that of Nagy.  Plaintiff emphasizes she
passed two state bar examinations while Nagy has not passed one
and has, in fact, failed the Oregon State Bar Examination on
three occasions.  Plaintiff also contends Nagy had only minimal
experience as a corrections hearings officer, which did not give
him the "superior" experience required to justify ODOC paying him
a higher starting salary.

        The Court notes there is some dispute as to the length
of time Nagy was a corrections hearings officer with Multnomah
County Sheriff's Office, but it is undisputed that he held that
position for at least eight months and also had experience as a

13 - OPINION AND ORDER

background investigator and a corrections officer.  In any event,
the Court concludes Plaintiff's opinion about Nagy's superior
qualifications is not sufficient to create a triable issue of
fact.  On this record, therefore, the Court concludes ODOC has
satisfied its burden to show the starting pay differential
between Plaintiff and Nagy was based on Nagy's superior
experience rather than gender.

### c.    Pretext for Discrimination

When an employer demonstrates a pay differential was
based on a factor other than gender, the burden shifts to the
plaintiff to show the employer's nondiscriminatory reason is a
pretext for discrimination.  *Stanley*, 178 F.3d at 1076.

According to Plaintiff, ODOC's pretext is evidenced by
the gender discrimination that allegedly occurred before
Plaintiff's employment with ODOC, during the hiring process, and
after Plaintiff began her employment.  For example, Plaintiff
alleges Scrogham discriminated against her prior to her
employment by not informing her of the next available corrections
hearings officer position, during the hiring process by not
permitting her to negotiate a higher salary, and after she began
her employment by requiring her to serve as sergeant-at-arms at
her own hearings even though those duties were not part of her
job description.  These allegations, however, are insufficient to
show that the reasons ODOC gave for the pay differential at issue

14 - OPINION AND ORDER

were a pretext for discrimination.  Among other things, these
allegations do not support a conclusion that the pay differential
between Plaintiff and Nagy was the result of gender
discrimination especially in light of the fact that ODOC hired
two male employees, Lumsden and Klein, close to the same time as
Plaintiff for the same position at the same pay step.

Plaintiff also contends ODOC's pretext is evidenced by
the inconsistency of the reasons it has given to justify the pay
differential between Plaintiff and Nagy.  For example, in a June
25, 2003, gender-discrimination investigative report prepared by
ODOC concerning Plaintiff's complaints against Scrogham, Nagy's
higher salary is attributed to his education and his previous
experience in conducting formal hearings; the handwritten notes
from ODOC that were submitted to BOLI in response to Plaintiff's
complaint about Scrogham incorrectly reflect that Nagy was an
attorney; and a human resources consultant for ODOC wrote a
letter to BOLI asserting the difference in starting pay was due
to Nagy being a "new hire" who was capable of negotiating a
higher starting pay while Plaintiff achieved her position as the
result of a promotion from the Oregon Department of Justice.  The
Court, however, notes even though ODOC's statements concerning
Nagy were not always entirely accurate or uniform, ODOC stated
consistently that Nagy's higher starting salary was due to his
experience, ability, and higher previous pay.

Based on this record, the Court concludes Plaintiff has failed to rebut ODOC's justification for any starting pay disparity between Plaintiff and similarly situated male employees. Accordingly, the Court grants ODOC's Motion for Summary Judgment as to Plaintiff's first claim under Title VII as to unequal compensation and as to Plaintiff's third claim under the EPA.

**B.  Plaintiff's Second Claim:  Retaliation under Title VII**

Title VII prohibits employment discrimination against an individual based on her gender. 42 U.S.C. § 2000e-2(a). Title VII, among other things, forbids an employer from "discriminat[ing] against" an employee who opposes any practice that is unlawful under Title VII. 42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of retaliation, the plaintiff must prove 1) she engaged in protected activity, 2) she suffered an adverse-employment action, and 3) a causal link exists between the protected activity and the employer's action. *Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the adverse-employment action. *Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003). If the defendant meets its burden, the plaintiff then must show "specific and substantial evidence" of pretext. *Id*. at

16 - OPINION AND ORDER

802.

   **1.    Plaintiff's *Prima Facie* Case**

      **a.    Protected Activity**

         It is undisputed that Plaintiff satisfies the protected-activity element of her *prima facie* case because she reported incidents of gender discrimination to ODOC in February 2003 and to BOLI in March 2003.

      **b.    No Adverse-Employment Action**

         The Ninth Circuit has held an adverse employment action in retaliation cases is a cognizable act reasonably likely to deter employees from engaging in protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). The Supreme Court, however, recently revised the standard for adverse-employment actions in retaliation cases. *Burlington N. & Santa Fe Ry. Co. v. White*, No. 05-259, 2006 WL 1698953 (S. Ct. June 22, 2006). In *Burlington*, the Supreme Court held a plaintiff must show a reasonable employee would find the challenged action "materially adverse" in order to establish a *prima facie* case for retaliation. *Id.,* at *10. In other words, the action might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.*

         Here Plaintiff alleges ODOC engaged in the following adverse-employment actions in retaliation against her as a result of her complaints of gender discrimination:

**(1)  ODOC refused Plaintiff's allegedly reasonable requests**

Plaintiff sought permission from ODOC to attend the state-wide hearings officer meeting in Salem on May 30, 2003. ODOC maintains Schumacher denied Plaintiff's request to attend the meeting and her request to travel to Salem in a May 23, 2003, email because ODOC did not want to pay Plaintiff for travel time, which was approximately seven hours round-trip.  ODOC also asserts Plaintiff previously had attended similar meetings via video conference without the need to travel.  Nevertheless, Plaintiff traveled to Salem in May 2003 on her own time and at her own expense to ensure she would not miss this "important" meeting.  Plaintiff asserts "no hearings officer has ever been denied attendance at a hearings officer meeting," and, in fact, Nagy regularly attended Salem meetings even though it required substantial travel time for him to do so.  Schumacher also refused Plaintiff's request to conduct hearings while in Salem even though Plaintiff alleges the hearings needed to be conducted and corrections hearings officers frequently conduct hearings at other facilities.

Schumacher's denial of Plaintiff's request to attend the hearings officers meeting and to conduct hearings after she traveled to Salem resulted in Plaintiff having to take vacation leave for her travel time to Salem in addition to missing the meeting.

18 - OPINION AND ORDER

Schumacher also denied Plaintiff's request to visit her soon-to-be new Salem office that she would be moving into shortly.  In his May 23, 2003, email, however, Schumacher had informed Plaintiff that she would be given ample time to set up her new office in Salem after her scheduled transfer in July. Nevertheless, Plaintiff alleges the denial of her request was unreasonable and only can be explained as retaliation.

### (2)  ODOC Promoted Wade Scrogham

Following Plaintiff's complaints of gender discrimination and pursuant to Plaintiff's request, ODOC allegedly agreed to transfer Plaintiff to Salem so Scrogham would not be her supervisor.  After Plaintiff worked in Salem for a few weeks, however, ODOC reorganized its operations and promoted Scrogham to supervisor over all hearings officers in Oregon, including Plaintiff.

Plaintiff alleges ODOC promoted Scrogham even though there was no need to create his new position and she asserts there were other candidates better qualified than Scrogham who could have filled the position.  Soon after learning that Scrogham once again was going to be her supervisor, Plaintiff took stress leave.

ODOC contends its reorganization was not an act of retaliation.  The reorganization plan was promulgated and approved by Rebecca Prinslow, the Inspector General, and Nick

19 - OPINION AND ORDER

Armenakis, the Deputy Director of ODOC.  According to ODOC, the reorganization was a business decision to provide uniformity of the supervision over all corrections hearings officers.

### (3)  Plaintiff's Signing of Time Sheets

Within a few weeks of returning from stress leave, Plaintiff and Scrogham attended a meeting of corrections hearings officers.  While in the proximity of male co-workers, Plaintiff alleges Scrogham requested that she sign her time sheets for the period she was on stress leave.  Plaintiff alleges this conduct was retaliatory and was intended to force Plaintiff to leave her job permanently.

ODOC contends Plaintiff was required to sign the time sheets, and the fact that her signature was requested in front of co-workers is not evidence of retaliation.

### (4)  ODOC's Reimbursement for Travel Time

ODOC reimbursed Plaintiff for 1 1/2 hours of travel time to a hearings officers meeting while other employees who traveled the same distance were reimbursed for two hours. Plaintiff alleges ODOC's conduct was retaliatory and was intended to force Plaintiff to leave her job permanently.  ODOC admits it mistakenly reimbursed Plaintiff for only 1 1/2 hours of travel time while reimbursing other, similarly situated hearings officers for two hours.  This "clerical error" was corrected, and Plaintiff acknowledges she was fully compensated.

20 - OPINION AND ORDER

ODOC also alleges it did not retaliate against Plaintiff in any manner as evidenced by the fact that after she filed her discrimination complaint with BOLI, ODOC continued to employ her as a hearings officer, maintained her salary, gave her pay raises, and provided her with a transfer to Salem as she requested.

Even when the record is viewed in the light most favorable to Plaintiff, the Court concludes ODOC's actions are not sufficiently adverse to dissuade a reasonable worker from making a charge of discrimination.  In other words, ODOC's refusal of Plaintiff's request to turn her personal trip into a business expense, ODOC's reorganization of its corporate structure to provide uniformity of supervision over all hearings officers, ODOC's request of Plaintiff to sign time sheets, and ODOC's minor error on travel reimbursement that it later corrected do not rise to the level of actions that a reasonable employee would find to be materially adverse.

### c.   No Causal Link Between Protected Activity and ODOC's Actions

A causal link between an employer's actions and an employee's protected activity may be established by an inference derived from circumstantial evidence such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected activity and the allegedly retaliatory employment action.  *Jordan v. Clark*, 847

F.2d 1368, 1376 (9th Cir. 1988).

Even if one of ODOC's employment actions were deemed to be materially adverse, the Court finds on this record that Plaintiff has not shown a causal connection between Plaintiff's complaints of gender discrimination and ODOC's actions.  The Court, therefore, concludes Plaintiff has not established a *prima facie* case of retaliation.

**2.   Legitimate, Nonretaliatory Reasons for ODOC's Actions**

Even if Plaintiff had established a *prima facie* case of retaliation, the record, nonetheless, establishes that (1) ODOC provided legitimate, nonretaliatory reasons for its allegedly adverse employment actions and (2) Plaintiff failed to provide specific and substantial evidence of pretext.

Accordingly, on this record the Court grants ODOC's Motion for Summary Judgment as to Plaintiff's second claim for retaliation under Title VII.

## CONCLUSION

For these reasons, the Court **DENIES** ODOC's Motion to Strike (#56) and **GRANTS** ODOC's Motion for Summary Judgment (#56).

IT IS SO ORDERED.

DATED this 7th day of July, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge